## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PATRICK LEVY AND PATRICE PORTER LEVY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-5065** |
| **PHILLIPS AND JORDAN, INC AND UNITED STATES ARMY CORPS OF ENGINEERS** | **SECTION: "S" (1)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Phillips & Jordan, Inc.'s Motion for Summary Judgment against the City of New Orleans seeking an order that the City of New Orleans must indemnify Phillips & Jordan, Inc. for plaintiffs' claims (Doc. #112), is **GRANTED**.

**IT IS FURTHER ORDERED** that the City of New Orleans' Motion for Summary Judgment against Phillips & Jordan, Inc. seeking an order that the City of New Orleans does not owe Phillips & Jordan, Inc. indemnity for plaintiffs' claims (Doc. #115), is **DENIED**.

**IT IS FURTHER ORDERED** that Scottsdale Insurance Company's Motion for Summary Judgment (Doc. #120) is **DENIED.**

### BACKGROUND

Defendant, Phillips & Jordan, Inc. ("P&J") contracted with the United States Army Corps of Engineers ("USACE") to remove storm debris caused by Hurricane Katrina. Defendant Durr Heavy Construction, LLC and Eagle Veteran Construction Services, LLC f/k/a Terry Tree-Sheen & Shine, LLC ("Eagle") sub-contracted with P&J to perform some of the work. On July 20, 2007,

Eagle entered into an oral subcontract with Storm Recovery Solutions, LLC ("SRS"), and a written contract was signed on August 9, 2007.  As part of the subcontract between Eagle and SRS, SRS agreed to obtain insurance for liability relating to its work and to name Eagle, P&J, and USACE as additional insureds.

On July 31, 2007, West Greene Insurance & Tax Services, the insurance agent that procured the policy for SRS, issued a certificate of liability insurance to SRS which stated that Scottsdale Insurance Company issued general liability policy number DEBYV-Z to SRS with Eagle, P&J and the owner as additional insureds, and that the policy had an effective date of July 20, 2007 to July 20, 2008.

Plaintiffs, Patrick and Patrice Levy, allege that on July 23, 2007, without their consent, P&J, Eagle, and the USACE participated [in the] cutting down of [a] water oak located on Plaintiffs' property.  Plaintiffs claim that the tree had been declared healthy by a tree arborist, and that the tree was of great sentimental value, adding value to their property.  Plaintiffs contend that defendants are liable to them for conversion, trespass, and negligence under Louisiana Civil Code article 2315, and under Louisiana Revised Statutes § 3:4278.1, for cutting their tree without consent.

P&J filed a third party demand against the City of New Orleans ("the City") alleging that the City agreed to indemnify it for any damages that arose out of the debris removal work by virtue of Executive Orders issued by Mayor C. Ray Nagin.  Also, Eagle filed a third party demand against Scottsdale alleging that it was insured under DEBYV-Z for the alleged damage to the Levy's tree. P&J and the City of filed cross motions for summary judgment on the indemnity issue, and

Scottsdale filed a motion for summary judgment arguing that it is not liable because insurance policy DEBYV-Z did not exist, and the policy it issued had an effective date after the event in question.

## ANALYSIS

### A.   Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B.   P&J'a and the City's Cross Motions for Summary Judgment Regarding Indemnity (Docs. # 112 & 115)

After Hurricane Katrina, former Mayor C. Ray Nagin issued Executive Order CRN 05-02 for the City pertaining to storm debris removal.  The order, which was effective from September 25, 2005, to September 25, 2006, permitted entry onto private property for the purpose of clearing storm

debris.  In December 2005, the effective date of Executive Order CRN 05-02 was extended to

December 31, 2006, by Executive Order CRN 05-09.  On November 3, 2006, C. Ray Nagin signed

Executive Order CRN 06-18, which extended the effective date of Executive Order CRN 05-09 to

November 3, 2007.  Executive Order CRN 06-18 provides in pertinent part:

> **WHEREAS**, an emergency exists as provided for in Louisiana Attorney General Opinions 05-0373 and 05-0360 and therefore the City of New Orleans hereby authorizes the United States Army Corps of Engineers and/or its contractors to enter private property when the landower is not available to sign a right of entry form to remove debris outside the dwelling or on the dwelling, including but not limited to the front yards, side yards and back yards, to pick up all eligible debris in and around the property that is impeding or preventing the reconstruction and/or rehabilitation of the dwelling;

> **WHEREAS**, the City of New Orleans hereby indemnifies and holds harmless and saves the United States Government, its agencies, agents and contractors against any claims whatsoever arising from the activities described in this Executive Order;

> \* \* \*

> **THEREFORE, BE IT RESOLVED**, that the City of New Orleans hereby gives the United States Government, its agencies, agents and contractors the authority to enter private property to carry out the activities described above and agrees to indemnify and holds and saves harmless the United States Government, its agencies, agents and contractors against any claims whatsoever arising from the activities on public and private property described in or arising from this Executive Order.

P&J argues that it is entitled to summary judgment on its third party claim for indemnity

against the City because there is no genuine issue of material fact that Executive Order CRN 06-18

provides that the City agreed to indemnify it against "any claims whatsoever arising from the

activities on public and private property described in or arising from this Executive Order."  P&J

4

argues that this indemnity provision is broad enough to cover plaintiffs' claims that it cut down their healthy tree because the activity arose out of its debris clean up activities that were authorized by the Executive Order.

The City argues that it is entitled to summary judgment because the indemnity provision applies only to debris removal, and the cutting of a healthy tree is not debris removal. The City contends that it has no obligation to indemnify P&J against plaintiff's claims.

Eagle opposed the City' motion arguing that P&J's interpretation of the indemnity provision is correct, and, alternatively, that the City is not entitled to summary judgment because there are genuine issues of material fact regarding whether the tree was healthy. Eagle points out that there are opposing expert reports from arborists regarding the tree's health.

Generally, the "rules governing the interpretation of contracts apply in construing indemnity agreements," whereby the "language in the indemnity agreement dictates the obligations of the parties." Hai Nam Chinese Rest. P'ship. v. B & B Const. of New Iberia, 942 So.2d 97, 105 (La. Ct. App. 2006). The interpretation of an unambiguous contract is an issue of law for the court. Amoco Prod. Co. v. Texas Meridian Resources Exploration Inc., 180 F.3d 664, 668 (5th Cir. 1999). Interpreting a contract is determining the common intent of the parties. LA. CIV. CODE art. 2045. "Such intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable and fair basis." Amitech U.S.A., Ltd. v. Nottingham Const. Co., - - - So.3d - - -, 2010 WL 4262277 (La. Ct. App. 2010). Further, "[i]ntent is an issue of fact which is to be inferred from all of the surrounding

circumstances." Id. (citing Freeport-McMoRan, Inc. v. Transcontinental Gas Pipe Line Corp., 924 So.2d 207, 213 (La. Ct. App. 2005), writ denied, 925 So.2d 1256 (La. 2006)).

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046.  "In addition, a contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." Texas E. Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 741 (5th Cir. 1998).  Each provision of a contract must be interpreted in light of the other provisions "so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE art. 2050.  Further, "[a]s a general rule of contract law, separate documents may be incorporated into a contract by attachment or reference thereto." Russellville Steel Co., Inc. v. A & R Excavating, Inc., 624 So.2d 11, 13 (La. Ct. App. 1993) (citing Action Finance Corp. v. Nichols, 180 So.2d 81 (La. Ct. App. 1965)).

The indemnity provision contained in the Executive Order CRN 06-18 unambiguously states that the City would indemnify the subcontracts of the USACE against  "all claims whatsoever arising from" the debris removal activities.  Regardless of the health of plaintiffs' tree, the removal of the tree arose out of the debris removal activities that were authorized by Executive Order CRN 06-18.  Therefore, the City must indemnify the subcontractors of the USACE for plaintiff's claims.

## C.    Scottsdale's Motion for Summary Judgment (Doc. #120)

Scottsdale filed a motion for summary judgment arguing that it is not liable for the Levy's claim because it did not issue an insurance policy number DEBYV-Z to SRS with effective dates of July 20, 2007 to July 20, 2008.  Scottsdale admits that it issued policy number CLS1390532 to

SRS with effective dates of August 13, 2007 to August 13, 2008, for the debris removal work. Scottsdale argues that the policy must be enforced as written and cannot be reformed or modified by the certificate of insurance.

Eagle argues that Scottsdale should be estopped from denying coverage because it relied on the certificate of insurance in permitting SRS to commence its work on July 20, 2007. Eagle argues that Scottsdale should be estopped from denying coverage when Scottsdale's agent represented that their was coverage.

### 1.    Choice of Law

A federal district court exercising diversity jurisdiction must apply the choice-of-law provision of the forum state to determine which state's substantive laws apply. See Klaxon v. Stentor Elec. Mfg. Co.,61 S.Ct. 1020, 1021 (1941). Louisiana's choice-of-law methodology is set forth in Louisiana Civil Code articles 3515 and 3537. The provisions "afford the balancing of competing interests between states." Champagne v. Ward, 893 So.2d 773, 786 (La. 2005). "The objective of those provisions is to identify the state whose policies would be most seriously impaired if its laws were not applied to the issue at hand." Id.

La. Civ. Code art. 3537 governs the choice of law in cases involving conventional obligations and provides:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and

> performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

"Applying these principles, Louisiana courts generally choose the law of the state in which the insurance policy in question was issued to govern the interpretation of the terms of the policy." Woodfield v. Bowman, 193 F.3d 354, 360 (5th Cir. 1999).  In this case, the insurance policy was issued in Tennessee, by a Tennessee insurance agent, to a limited liability company that maintained its office in Tennessee.  Therefore, Tennessee law applies to this insurance dispute.

### 2.    Insurance Policy Interpretation and Estoppel

In Alcazar v. Hayes, 982 S.W.2d 845, 848 (Tenn. 1998), the Supreme Court of Tennessee outlined the principles of insurance contract interpretation:

> In general, courts should construe insurance contracts in the same manner as any other contract.  The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles.  It is the Court's duty to enforce contracts according to their plain terms.  Further, the language used must be taken and understood in its plain, ordinary and popular sense.  The courts, of course, are precluded from creating a new contract for the parties.

(Internal citations and quotations omitted).

Further, the Supreme Court of Tennessee has held that the doctrines of waiver and estoppel can be applied to protect the insured's "right to expect coverage as promised by the insurer's agent," "even though they may have the effect of broadening the coverage of the policy." Bill Brown Const.

Co., Inc. v. Glens Falls Ins. Co., 818 S.W.2d 1, 11 (Tenn. 1991).  Thus, "an insurer may be estopped

to deny coverage for any loss by the misrepresentations of its agent upon which the insured

reasonably relies." Id. at 12.

In this case, West Greene issued a certificate of liability insurance in which it represented

to Eagle that it had obtained general liability insurance  policy number DEBYV-Z from Scottsdale

for SRS for the work with the effective dates of July 20, 2007 to July 20, 2008.  Scottsdale contends

that the referenced policy did not exist.  A certificate of insurance is typically evidence of an

insurance policy.  Neither Eagle or Scottsdale had presented evidence regarding: how the certificate

of insurance was generated; why the certificate contains a reference to policy number DEBYV-Z;

whether West Greene was SRS's or Scottdale's agent; the origin of the different effective dates of

the purported policies; or when the premium was paid.  Without such information, summary

judgment is premature.

## CONCLUSION

**IT IS HEREBY ORDERED** that Phillips & Jordan, Inc.'s Motion for Summary Judgment

against the City of New Orleans seeking an order that the City of New Orleans must indemnify

Phillips & Jordan, Inc. for plaintiffs' claims (Doc. #112), is **GRANTED.**

**IT IS FURTHER ORDERED** that the City of New Orleans' Motion for Summary

Judgment against Phillips & Jordan, Inc. seeking an order that the City of New Orleans does not owe

Phillips & Jordan, Inc. indemnity for plaintiffs' claims (Doc. #115), is **DENIED.**

**IT IS FURTHER ORDERED** that Scottsdale Insurance Company's Motion for Summary

Judgment (Doc. #120) is **DENIED.**

New Orleans, Louisiana, this  29th  day of June, 2011.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**